

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Leroy L. Moore
County Attorney
Houston County
Crockett, Texas

Dear Sir:

Opinion No. O-6051
Re: Disposition of money and
checks paid to County Clerk
for mailing out mortgage
lists to banks in the county
and other like services.

We are in receipt of your letter of October 26,
1944, requesting the opinion of this department on the above
stated matter. Your letter reads, in part, as follows:

"Is it required by law that the County Clerk
turn in to the County Treasurer all money and
checks paid to her on the collection for mailing
out mortgage lists to banks in the county, or any
other work of such nature which is paid for by
individuals and banks, not listed as a duty of
office of the County Clerk?

"Under the valuation statute as to public of-
ficials, the officers of Houston County are on a
salary basis, consequently the County Clerk's of-
fice is operated on a salary basis and not on a
fee basis."

Article 3891, Vernon's Annotated Civil Statutes,
provides, in part, as follows:

" . . . . All current fees earned and col-
lected . . . during any fiscal year in excess of
the maximum and excess allowed by this Act, . . . .
shall be paid into the County Treasury . . . . .

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

The compensation, limitations and maximums herein fixed shall also apply to all fees and compensation whatsoever collected by said officers in their official capacity, whether accountable as fees of office under the present law, and any law general or special, to the contrary is hereby expressly repealed. The only kind and character of compensation exempt from the provisions of this Act shall be rewards received by Sheriffs . . . and moneys received by County Judges and Justices of the Peace for performing marriage ceremonies, which sums shall not be accountable for . . . as fees of office."

Section 61, Article 16, Constitution of Texas provides, in part, as follows:

" . . . All county officers in counties having a population of 20,000 or more, . . . shall be compensated on a salary basis, . . . all fees earned by . . . county . . . officers shall be paid into the county treasury . . . when collected."

In pursuance of the foregoing constitutional mandate, Section 1, Article 3912e, Vernon's Annotated Civil Statutes, provides that no county shall pay to any county officer in a county having a population of 20,000 or more, any fee or commission for any service performed as such officers.

Section 6, Article 3912e, provides, in part:

"It shall be the duty of all officers to charge and collect in the manner authorized by law all fees and commissions which are permitted by law to be assessed and collected for all official service performed by them. As and when such fees are collected they shall be deposited in the Officers Salary Fund, . . . "

Section 22, Article 3912e, V.A.C.S., provides, in part:

"The provisions of this Act shall be cumulative of all laws not in conflict herewith."

Under Article 3912e, as it relates to compensation of county officers and provides that the statute should be cumulative of all other laws not in conflict therewith, those provisions of Article 3891, remain in effect which require (1) that current fees earned and collected by county officers in excess of the maximum allowance should be paid into the County Treasury and (2) that the compensation and maximums therein fixed should apply to all fees and compensation whatsoever collected by said officers in their official capacities, whether accountable as fees of offices under the present law (Nueces County v. Currington, 162 S. W. (2d) 687). It is clear that the compensation referred to in your inquiry is not of the kind and character exempt from the provisions of Article 3891, supra.

In the case of Nueces County v. Currington, 162 S.W. (2d) 687, the county tax assessor and collector was sued by the county for the recovery of the amount of certain fees or charges collected by said assessor and collector for the issuance of tax certificates. The tax assessor and collector contended that there was no statutory duty on her part to issue tax statements on property where the taxes were not delinquent, and that the service of issuing certificates on property where the tax status was non-delinquent was a personal service and that she was entitled to make a personal charge therefor and retain such money so received. The Court held that this particular service was in performance of an act which she was authorized to do by statute, and therefore, such fee so collected was in an "official capacity", and that such fees should be paid into the County Treasury, regardless of whether or not the fees were properly collected. The Court further held that "unless a fee is provided by law for an official service required to be performed, none can be legally charged therefor. It does not follow, however, that a county whose official collects a fee wrongfully, but under color of office, is not entitled to have same deposited and paid over in the same manner as is required for disposition of fees rightfully collected."

In the case of Crosby County Cattle Co. v. McDermett, 281 S.W. 293, the Court held that it was not within the "official

duty" of a tax collector to make a certified list from tax records in his office showing the payment of taxes and by whom paid on 80 tracts of land for the years 1901 to 1917, inclusive. Such a service was definitely beyond that required in furnishing the usual tax statements, current and delinquent, merely showing whether the taxes on a tract at that time, are paid or unpaid, which has been held to be an "official act".

The determination of the matter as to whether a service performed by an official is in his "official capacity" depends upon the circumstances under which the compensation is received and the specific purpose for which it was received as such circumstances and purposes relate to the purview and scope of the functions of that particular office. A fact situation involving circumstances and purposes almost analogous to that presented by this inquiry is presented in the case of Board of Commissioners of Hennepin County v. Dickey, 90 N.W. 775; 86 Minn., 331, Sup. Ct. of Minn. Previous to 1891, the compensation of the district clerk of Hennepin County was established by a special fee schedule. In that year, this officer was paid a fixed salary in lieu of all fees which he had been allowed to retain before that time, and he was required, under the salary law, to turn over to the county treasury all fees collected by him in his official capacity. The fees for official services of the clerk, according to the fee schedule, were not changed in any way after the compensation was changed from the fee basis to a fixed salary. After the clerk took possession of the office, with his compensation fixed a t a definite salary, he continued a practice of furnishing daily reports to abstract companies and commercial agencies. These unauthenticated reports, given out at regular intervals, concerned information derived from the files and records with reference to suits commenced, amounts involved, as well as judgments entered and docketed. There was no express statutory requirement for the clerk to render this service, and no fee was stipulated in the fee schedule for such service. For this work, the clerk received a compensation agreed upon between him and those to whom the statements were furnished.

In this case the Court held that the furnishing of these unauthenticated statements to commercial agencies, etc., made from an examination of the files and records in his custody, was within the purview and scope of his official employment, and that the clerk was not authorized to appropriate to his own use the compensation realized therefrom. The Court held further the fact that a schedule of fees had been prescribed for the

services of an official is not an invariable test that the enumerated services are the only ones rendered in his "official capacity", within the meaning of an act providing that his salary shall be in full payment for all services rendered in his official capacity.

In discussing the matter as to what constitutes "fees" collected in an "official capacity", the Court said:

" . . . it is claimed that the moneys received by respondent for the statements furnished to the abstract men and agencies were not 'fees,' as that word is properly understood; that 'fees' are compensation for particular acts or services rendered by public officers in the line of their duty, as expressly designated and authorized by law. This claim as thus abstractly stated is correct as far as it goes, yet we must still consider whether the clerk could appropriate to his own use emoluments for services not within the provisions of the fee schedule, without reference to their essential character, simply because not mentioned therein. The act of 1891 prescribes in terms that the clerk's salary shall be in full for all services rendered in his 'official capacity'. It would therefore seem necessary to determine whether the fee bill furnishes a sufficient criterion of the clerk's legal duties, and hence is an invariable test of 'official capacity,' whereby the right to retain or turn over any compensation he receives is to be tested. The Hennepin county fee bill before the commutation provided in the salary act could hardly be regarded as furnishing the sole standard of official obligation imposed upon the clerk by law. It is true that this schedule established the emoluments of the office. In this respect the clerk was controlled by it. It was also a protection to the public against improper charges and unlawful exactions, but a very slight application of reason to existing conditions will show that it could not have been regarded as the sole measure of 'official capacity' or the limit of the legal burdens imposed upon the clerk. We shall find upon investigation numerous instances in our procedure statutes where duties are imposed upon clerks of courts, yet we will not discover in this or other fee bills express

requirements that such officers shall do any act whatever, so that, if these schedules are to be regarded as tests of duty, it must be for the reason that such duties are implied because compensation is provided therefor. That duties are implied from their recognition in a fee bill may be true, but if we were to go to fee schedules to ascertain from that source alone when the clerk acts in an official capacity, we shall also find that in material respects they are inadequate . . . any comparison between the duties for which fees to officials are specifically provided and those which are implied will show that implication is the rule, express requirement the exception. The legislature has already imposed, and may likewise hereafter impose, upon public officials, among them clerks of court, duties for which no emoluments are prescribed. Such duties cannot be evaded upon the claim that fees are not specifically designated therefor; since the reasonable view is well settled by the decisions that the emoluments allowed to a public officer under a fee system of compensation constitutes the sole remuneration he is to receive for his entire official services. Mechem, Pub. Off. § 862, and cases cited; State v. Smith (Minn.) 87 N.W. 775.

"Unquestionably, officials are responsible public agents, who must subserve public interests; and no duties enjoined are more weighty than many imposed upon court clerks, who are intrusted with the absolute control of records of the highest importance; and it has always been the object of the law not only to have such records open at proper times for public inspection, but to require suitable aid from their custodians in the recognized benefits to all who need information therefrom. Hence it would follow that the giving of information, by the clerk or his salaried deputies, during office hours, which requires examinations, and, as incident to this work, written statements of the results, is in its very essence and character official, and not personal to the officer, upon any fair and reasonable view of what appertains to the duties of the office."

Article 3920, V.A.C.S. prescribes a fee for a county clerk to certify any fact or facts contained in the records of

his office. The banks and other commercial institutions mentioned could get the desired information in that way. If the information were secured in that way, there is no doubt that such service rendered by the clerk would be in his "official capacity." The fact that substantially the same information may be given out in a different form, or is not certified to, does not relieve such service from being official in nature, emanating from the office of the county clerk. In this connection, in the case of Board of Commissioners of Hennepin Co. v. Dickey (supra), the Court said:

> " . . . . it is provided that the clerk shall have for every certificate furnished a specified fee. While no certificates to these statements were requested, or, in fact, attached, yet statements over certificates could have been demanded, and the clerk would, under the implied obligations required by the fee bill, have been bound to have given them. While we would not hold that the statements furnished technically fall within either of these specific provisions for fees, yet the purposes for which they were intended indicate the objects sought thereby, and characterize the services actually rendered as official . . . .

> "We must not fail to give full significance, in dealing with the questions presented, to the efficient results of the salary act, and the changed relations between the clerk and the county effected thereby. It is quite clear from the very terms of this act that the county was to have all emoluments for the clerk's official services, or which could be reasonably obtained by a faithful administration of the office . . . . If copies, certificates, or searches where no copies were made would within any fair intention or expectation provide a means by which services of the clerk would be given to secure legitimate ends, it ought not to be evaded by any plan that would deprive the county of its revenues to create perquisites for himself . . . .

> "We are therefore required to adopt the conclusion that a proper legal view of the clerk's

duty to deal with the money thus received from the statements furnished to the abstract men and agencies must be determined against his asserted rights to appropriate the same to his own use, upon the considerations that such statements were furnished in his official capacity, and that it was likewise the interest and the clear right of the county to have the compensation received therefor turned into its treasury; and it is of no significance that the specified fees provided for in the schedule for searches were not in terms exacted, or even that more than legal fees had been received by the clerk; for, such services being official in character and having been voluntarily paid, whatever was so paid became a resource of the county, and not a perquisite of the clerk. But, if any question could arise as to the correctness of charges thus made, it would be of no avail to the respondent, nor could he take advantage of mistaken rights in this respect. This would be a question to be settled between the persons paying for the services and the county . . . . "

From the foregoing, it appears that the sending out of mortgage lists to banks or others, is an act done under circumstances and for purposes which indicate that such service is within the purview and scope of the official employment and the functions of a county clerk. Also, it is well settled that when the compensation of a public officer is left to construction, it must be favorably construed in favor of the government. (Eastland County v. Hazel, 288 S.W. 518; Burke v. Bexar County, 271, S.W. 132). Where a statute is capable of two constructions, one of which would give an officer compensation for his services in addition to his salary and the other not, the latter construction should be adopted. (Madden v. Hardy, 50 S.W. 926)

After carefully considering the pertinent constitutional and statutory provisions, together with the authorities herein cited, it is the opinion of this department that the compensation received by a County Clerk for preparing and mailing out mortgage lists to banks, and for other work of a like nature, is accountable as a fee of office. You are therefore advised that the County Clerk of Houston County, or any other county in

Honorable Leroy L. Moore, Page 9

this state operating on a salary basis, should remit such money to the County Treasurer for the benefit of the Officer's Salary Fund.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED NOV 19

ATTORNEY GENERAL OF TEXAS

By

J. A. Ellis
Assistant

JAE:ff



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN